[No. 13300.  *En Banc.*  May 2, 1916.]

## *In the Matter of* WENATCHEE RECLAMATION DISTRICT. CONRAD ROSE *et al., Respondents,* v. H. A. KIMBALL, *Appellant.*[1]

WATERS AND WATER COURSES—IRRIGATION DISTRICTS—ESTABLISH-MENT—CONFIRMATION—REVIEW—RECORD.  In a proceeding to "judi-cially examine, approve, and confirm" the establishment of an irri-gation district, as provided in Rem. & Bal. Code, § 6489, the findings of the county commissioners as to the insufficiency of the water supply and the semi-arid nature of the land cannot be reviewed un-less the evidence introduced before the commissioners is preserved and brought before the court.

SAME—IRRIGATION—POWERS OF DISTRICT—PURCHASE OF EXISTING SYSTEM.  The purchase of an existing system of irrigation works to be enlarged and reconstructed is authorized as within the spirit of the irrigation act (3 Rem. & Bal. Code, § 6417 *et seq.*), the primary purpose of which was to provide arid lands with an adequate system of irrigation; the powers of the district being general with no ex-press prohibition of such a purchase.

SAME—IRRIGATION—DISTRICT—NAME.  The designation of an irri-gation district as the W. "reclamation" district is authorized by statute requiring the county commissioners to designate a name, without restriction.

SAME—IRRIGATION—DISTRICTS—ESTABLISHMENT — CONFIRMATION—RECORD.  Under 3 Rem. & Bal. Code, § 6417, authorizing a petition for the organization of an irrigation district to be presented at a regular meeting of the board of county commissioners, or at a special meet-ing ordered to consider the petition, the record need not show whether the meeting was a regular or a special one, in view of the requirement that the court, on proceedings to confirm, must dis-regard any error, irregularity or omission not affecting substantial rights.

EVIDENCE—MEETINGS OF COUNTY BOARD—ADJOURNMENTS — PAROL EVIDENCE.  It may be shown by the testimony of the clerk that the meetings of the board of county commissioners were adjournments of a regular meeting to designated days, although not so entered in the minutes.

WATERS AND WATER COURSES—IRRIGATION DISTRICTS—ESTABLISH-MENT—PROCEEDING—NOTICE—DESCRIPTION.  Notices for the organiza-tion of an irrigation district, required to contain a description of

[1]Reported in 157 Pac. 38.

the property to be included in the district, are sufficient where the boundary line is traced through various government corners, the sections, township and range being designated by the use of figures in accordance with the custom in government surveys.

EVIDENCE — JUDICIAL NOTICE — GOVERNMENT SURVEY. The courts judicially know the manner in which government surveys are extended over public lands, and approximately the location of the base and meridian lines.

WATERS AND WATER COURSES—IRRIGATION—DISTRICTS—ESTABLISH-MENT—DESCRIPTIONS—DISCREPANCIES. In proceedings to establish an irrigation district, discrepancies in the description of an exempted tract as contained in the petition and in the notices of the election, do not invalidate the proceedings, where there was no lapse in or uncertainty as to the exterior boundary of the district; especially where the area of the exemption is negligible and will not noticeably affect the tax levy on the remaining lands, since it may be said, as a matter of law, that it did not affect the result of the election.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 21, 1915, upon findings in favor of the petitioners, confirming the formation of an irrigation district, after a trial to the court.    Affirmed.

*Guy B. Groff*, for appellant.
*Williams & Corbin*, for respondents.

FULLERTON, J.—On January 18, 1915, the board of county commissioners of Chelan county entered an order declaring certain described territory, situated in part in the county of Chelan and in part in the county of Douglas, duly organized as an irrigation district, under the name and style of Wenatchee Reclamation District; further declaring that certain named persons voted for at the election held for the organization of the district had been duly elected directors of the district.    Subsequent to the entry of the order, the persons so declared elected directors met and organized as a board.    At a subsequent meeting, the board found it advisable, in order to carry out the purposes for which the district was organized, to purchase an existing irrigating system then in operation over a portion of the district, and to recon-

struct, better, and enlarge the same; and to that end, found it necessary to raise money by the issuance and sale of bonds of the district, estimating and determining the amount of money required to be $350,000. An election was thereupon called and afterwards held, at which the question whether or not bonds of the district in the amount so estimated should be issued was submitted to the electors of the district. A canvass of the vote showed a majority in favor of the issuance of the bonds and the board so declared, entering an order on their minutes to that effect.

On November 26, 1915, the board of directors of the district filed a petition in the superior court of Chelan county, particularly setting forth the proceedings had in the formation of the district and the authorization of the issuance of the bonds, and alleging generally that the district under its adopted name was a duly and regularly organized irrigation district under the act of the legislature of the state of Washington approved March 20, 1890, and the acts amendatory thereof and supplemental thereto, and praying that the court fix a time and place for hearing such petition, and that upon such hearing it examine, approve and confirm such proceedings.

Due notice of the hearing on the petition was given, and prior to the time fixed therefor, one H. A. Kimball appeared and filed an answer to the petition, in which he alleged that he is the owner of certain lands situated in the county of Douglas and within the boundaries of the district, which land was attempted to be incorporated into the district as a part thereof. The answer put in issue substantially all of the allegations of the petition relative to the legal sufficiency of the proceedings had in the organization of the district, specially questioning the legal sufficiency of the notices given of the elections held relative to the formation of the district and the regularity of the meeting of the board of county commissioners at which the petition for the organization of the district was presented. It was alleged affirmatively that the notices

given of the intended formation of the district failed to correctly or properly describe, or describe at all, the lands intended to be included in the district; that the notices did not describe the purported district as it was described in the original application for its formation; that all of the lands attempted to be included in the district then had an adequate and sufficient supply of water from other sources, and that much of the land was not arid or semi-arid; and that the name adopted as the name of the district was not one permitted by law to be adopted as the name of an irrigation district.

A hearing was had on the issues raised by the petition and the answer thereto, resulting in findings and conclusions by the court to the effect that the proceedings for the organization of the district were regular, and in a decree confirming the same. From this decree, Kimball appeals.

At the hearing had in the superior court, the petitioners offered no evidence in support of the finding of the board of county commissioners to the effect that the land included within the boundaries of the district did not have a sufficient water supply from another source, or that such lands were arid and semi-arid, but contented themselves with the showing that such proofs had been made before the board at the hearing had on the petition for the establishment of the district, and that the board had found the facts to be in accordance therewith. The appellant, in support of the allegations of his answer to the contrary, offered to prove that the facts were not in accord with the findings of the board; that, in fact, the lands in the district were then being supplied, and had at all times been supplied, with sufficient water for irrigating purposes and were not arid or semi-arid lands. This offer of proof the trial court rejected, and its ruling in that regard constitutes the first error assigned.

The court seemingly excluded the evidence on the authority of the case of *Hanson v. Kittitas Reclamation District*, 75 Wash. 297, 134 Pac. 1083. In that case we held that a land owner, whose lands had been included in an irrigation district

regularly organized and confirmed, could not have the same excluded by an independent action based on the ground that such lands had at the time of the organization of the district a sufficient supply of water from another source and were thus wrongfully included within the district. But the ruling was rested on the principle that that action was in the nature of a collateral attack on the proceedings; that the findings and conclusions of the board were final in such an action and that they could be reviewed only in some revisory or correctory proceedings authorized by law for that purpose, of which that action was not such. The present proceeding is one specially authorized to "judicially examine, approve, and confirm," the action of the board and plainly, we think, the principle of the case does not apply.

But we think the ruling was nevertheless without error. Since the power of the court in the confirmatory proceedings is to "judicially examine, approve and confirm" [1] the proceedings of the board of county commissioners is case it shall find them in conformity with the statutes, and to declare them illegal in whole or in part in case it finds that they are not so, it seems to us to follow that the right of review is confined to the record made by the board. This does not mean that the findings of fact made by the board may not be reviewed in any manner in the reviewing court, but means that such findings can be reviewed only upon the evidence introduced before the board. In other words, if the person controverting the facts which the board must find in order to lawfully establish the district wishes to have the facts reviewed in the confirmatory proceedings, he must cause the evidence introduced before the board to be preserved and brought before the superior court as other parts of the board's records are brought before it. To contend otherwise, is to contend that the party objecting may ignore the board entirely and present his evidence in the superior court only; a proceeding which will result in a second independent trial of the facts

[1]Note:  Rem. & Bal. Code, § 6489.—Rep.

necessary to be found in order to justify the establishment of the district, on evidence not before the board and on which the board might have refused to establish the district had it been presented to it. It is our conclusion that the statute does not contemplate such a retrial, and for that reason that the ruling of the court is without error.

In the proceedings had for the organization of the district and in the resolution of the board of directors of the district authorizing the issuance of bonds, it is recited that one of the purposes of the organization is to purchase, enlarge, and reconstruct an existing system of irrigation works then in operation in the district, but which had become inadequate to furnish for the irrigable lands situate therein a sufficient supply of water. It is contended by the appellant that the statutes as they then existed did not contemplate an organization for such a purpose, and he argues that the organization is invalid for that reason. But without following the argument, we think the statute sufficiently broad to permit the organization of a district for the purposes intended. The language of the statute defining the powers of the district is more or less general, and there is no express provision prohibiting such a purchase. Its primary purpose is to enable owners of lands situated in the arid regions of the state to provide their lands with an adequate system of irrigation, and its language should not be so construed as to restrict too narrowly this purpose. Plainly, such a purchase is within the spirit of the act, and we cannot conclude it to be without its letter.

The next contention is that the court erred in holding that the name, "Wenatchee Reclamation District," may be properly used as a name for an irrigation district. But the requirement of the statute is that the "board of county commissioners shall . . . designate a name for the proposed district," without restriction of any kind as to the character of the name chosen. And while it is true that the statute

authorizes the organization of reclamation districts which have for their purposes something entirely different from that of irrigating arid lands, yet, we cannot think the name so far confusing as to warrant the holding that an irrigation district could not be properly organized with such a name.

The next contention is that the petition for the organization of the district was not presented for consideration at a regular meeting of the board of county commissioners of Chelan county. Since the statute (Laws 1913, p. 558; 3 Rem. & Bal. Code, § 6417) permits a petition for the organization of an irrigation district to be presented at any regular meeting of the board, or at a special meeting ordered to consider and act upon the petition, we are not certain that we have caught the precise point of the objection. The record shows that the petition for the organization was signed by the required number of holders of title to land within the proposed district, that notices were regularly published reciting that the petition would be presented to the board of county commissioners on a day and hour named in the notice, and that it was so presented, the board being then in session. The notice does not recite whether the meeting was a regular meeting of the board, or whether it was one specially called to consider the petition, nor does the minutes of the board's meetings show the fact. We assume, therefore, that the appellant means to contend that, since this is an action brought to review the proceedings of the board in establishing the district, no presumptions of regularity will be indulged in, but that, on the contrary, the proceedings must show regularity on their face. But the statute authorizing the review prescribes that the court, in inquiring into the regularity, legality, or correctness of the proceedings, must disregard any error, irregularity, or omission which does not affect the substantial rights of any party to the proceedings. Clearly it could not affect any of the rights of the parties to this proceeding whether the meeting of the board was a regular

meeting, an ordinary special meeting, or a meeting specially ordered to consider and act upon the petition, and the silence of the record in that respect we conclude cannot be fatal to the proceedings. After all, the notice is the principal consideration, and if this was regularly given, as the trial court found, the character of the meeting of the board,—that is, whether a regular meeting, a special meeting, or one specially ordered to consider the petition, cannot be material.

The foregoing conclusion is based on the record made by the board of county commissioners themselves. It was testified, however, by the clerk of the board, that the meeting was a regular meeting of the board which had adjourned from time to time to that date after its regular meeting day on October 5, 1914. The adjournments were not entered on the minutes of the board, although meetings were held on the designated days to which the clerk testified the adjournments were taken. It is contended that the clerk's testimony was not admissible to prove the fact, but we think it competent. This court, in common with many other courts, has held it competent to show by parol a contract entered into with the board not recorded in their minutes (*Long v. Pierce County*, 22 Wash. 330, 61 Pac. 142; *Franklin County v. Carstens*, 68 Wash. 176, 122 Pac. 999); and the same principle would permit the showing by parol of an adjournment of the board to a day certain where such showing supplements and is not contradictory of the record. Whether, therefore, we consider the record as made, or as supplemented by the oral proofs, we think there is no merit in the objection made as to its sufficiency.

It is next contended that the court erred in holding sufficient the notices given of the intent to present to the board of county commissioners the petition for the organization of the district, and the notices given of the election held to determine upon the organization of the district. The statute requires that these notices contain a description of the property to be included within the district, and the claim is that

these descriptions are insufficient. The notices contained, first, a description of a tract of land by metes and bounds; second, certain specifically described tracts not included within the first description; and third, certain specifically described tracts which were exempted from the other descriptions. In the description by metes and bounds, the boundary line is described as beginning at a certain quarter section corner "of Section 26, Township 24, North, Range 18, E. W. M.," and running thence to various other section corners, some of which are described by the use of figures to designate the township and range, omitting the ordinary and usual abbreviations; thus, the boundary is described as running to the "north line of section 13-23-19;" "to the quarter corner between sections 16 and 21-23-20;" "to the S. W. ¼ of Sec. 21-23-20;" and similar descriptions are given for many other points in the boundary line. The appellant argues that these are hieroglyphics merely, without meaning, and hence render the description unintelligible. Land surveyors and engineers familiar with land surveys, called by the respondent, however, had no difficulty in determining the meaning; testifying that the figures designated the section, township and range in which the mentioned corner was situated, and that no surveyor or engineer would have difficulty in tracing the line because of the use of these abbreviations.

But if the question be one of law to be determined by the court from the language used in the notice itself and not from extrinsic evidence, we are constrained to hold the description sufficient. We know judicially the manner in which the government surveys are extended over the government lands, and know approximately at least in the same manner the location of the base and meridian lines from which the townships and ranges into which the surveys divide the land are numbered. We are advised from the general description that the lands included within the district lie within the counties of Chelan and Douglas, and therefore lie north of the base and east of the meridian line. We know, further-

more, that these corners are described with reference to the
government surveys, and that, in so describing land, the use
of figures to denote the section, township, and range are
usual and in accordance with custom.  Applying this knowl-
edge, we are unable to see in what manner the description
could be misleading, or that the use of the abbreviation
adopted could mean other than the section, township, and
range in which the point in the boundary line mentioned is
situated.

The only precedent cited to us which passes upon the direct
question is found in the case of *Little Rock & Fort Smith R.
Co. v. Evins*, 76 Ark. 261, 88 S. W. 992.  The court there
held such a description sufficient, using this language:

"It is contended by appellant that the description of the
land in the deed adduced by the appellee in the trial of this
action as evidence of his title to the land appropriated for
right of way was not sufficient to identify the land.  It is
described in one deed as N. E. fr. quarter of the N. E. fr.
quarter, section 22-8-22 W., and in the other, N. E. fr.
N. E. quarter of section 22, township 8, N., range 22 W.
It was described in both deeds as situated in the county of
Johnson, in this state.  It was admitted by the parties that
the tract in controversy contained seven and nine-hundredths
acres.  We understand from this description that the land
meant is the northeast fractional quarter of the northeast
quarter of section twenty-two, in township eight north, and
in range twenty-two west, situated in the county of Johnson,
in the state of Arkansas.  This description is sufficient."

In the petition for the formation of the district, a certain
tract of land in the list of property exempted from the gen-
eral boundaries was described as a certain ten-acre tract in
section 10, township 22 north, range 20 east of the Wil-
lamette meridian; while in the notices given of the election
held for the organization of the district, the corresponding
description is a tract containing 2.5 acres in section 5, of
the same township and range.  The final order of the board
of county commissioners exempted the tract described in the
original petition.  It is suggested that this discrepancy is

fatal to the proceedings, since the result is that the published notices of the election for the organization of the district did not correctly describe the lands included within the boundaries of the district as established by the board. But it is our opinion that the discrepancy cannot have the effect of avoiding the entire proceeding. It leaves no lapse in, nor does it create any uncertainty as to, the exterior boundary of the district. This is correctly described if either of the descriptions be adopted as the description of the tract intended to be excluded, and the requirement of the statute that the published notices of the election "shall describe the boundaries" of the established district has been complied with.

But perhaps the real question is, can the court say, as a matter of law, that the election would not have resulted differently had the notices of the election shown the intent of the organizers of the district to exempt ten acres of land in the section numbered 10, instead of 2.5 acres in the section numbered 5. It seems to us that it can be so said. Compared with the entire area of the district, the area of the exempted portion is negligible. Whether the tract be included or excluded, the tax levy on the remaining lands necessary to sustain the district and pay off the contemplated issue of bonds will not be noticeably affected. We cannot think, therefore, that any elector who voted for the organization of the district would have voted otherwise had these notices correctly described the land to be exempted. None of them, at least, are here so contending.

Our conclusion is that the order and judgment of confirmation entered by the trial court should be affirmed. It is so ordered.

Mount, Holcomb, Ellis, Parker, Main, Chadwick, and Bausman, JJ., concur.