## JACKSON et al. v. BONNEVILLE IRR. DIST.

No. 4195.   Decided November 16, 1925.   Rehearing Denied February
2, 1926.   (243 P. 107.)

1.   WATERS AND WATER COURSES—IF BOARD OF DIRECTORS OF IRRIGA-
     TION DISTRICT ACTED WITHIN JURISDICTION, ERRORS COULD NOT BE
     CORRECTED, IN ACTION TO QUIET TITLE.   Proceeding to quiet title
     as against irrigation district's right to levy taxes was a col-
     lateral attack on decree approving and confirming organization
     of an irrigation district under Laws 1919, c. 68, and proceedings
     of its directors, and if board acted within its jurisdiction, errors
     by it could not be corrected.

2.   WATERS AND WATER COURSES—STATEMENTS BY OFFICERS OF IRRI-
     GATION DISTRICT HELD NOT BINDING ON DISTRICT.   Irrigation dis-
     trict, organized under Laws 1919, c. 68, was not bound by state-
     ments of its officers, unless authorized by the board of directors,
     and evidence that landowners protested to its president and
     officers that their lands should be excluded, and officers assured
     them that matter complained of would be corrected, was inad-
     missible.

3.   CORPORATIONS—TO BIND CORPORATION, BOARD OF DIRECTORS MUST
     ACT AT REGULAR OR SPECIAL SESSION.   To bind a corporation,
     its board of directors must act, and act as a board either in a
     regular session or in a special session called for that purpose.

4.   WATERS AND WATER COURSES—COUNTY COMMISSIONERS AUTHOR-
     IZED TO ALLOT WATER TO LAND IN IRRIGATION DISTRICT ALREADY
     SUFFICIENTLY SUPPLIED.   Where county commissioners, in com-
     pliance with Laws 1919, c. 68, gave required notice of hearing
     on question of exclusion and inclusion of lands and revision
     of allotment of water to lands within irrigation district, allot-
     ment of water to land already supplied with sufficient waters
     from independent sources held not beyond jurisdiction of com-
     missioners.

5.   WATERS AND WATER COURSES—BOARD OF DIRECTORS OF IRRIGATION
     DISTRICT, CANNOT AFTER ORGANIZATION COMPLETE, MAKE ALLOT-
     MENT TO LANDS EXCLUDED, NOR INCLUDE NEW LANDS, WITHOUT
     NOTICE OR CONSENT.   The board of directors of an irrigation
     district, organized under Laws 1919, c. 68, cannot, in view of
     due process clauses of federal and state Constitutions, after
     organization is complete, make allotment of waters to lands
     theretofore excluded, nor include new lands or parties, without
     notice or consent.

6. CONSTITUTIONAL LAW—COURT, IN INTERPRETING STATUTE, MUST
   SOLVE EVERY REASONABLE DOUBT IN FAVOR OF ITS CONSTITUTION-
   ALITY. As it is court's duty to maintain integrity of federal and
   state Constitutions, its first duty in interpreting a statute is
   to presume that it is constitutional and solve every reasonable
   doubt in favor of its constitutionality.

7. CONSTITUTIONAL LAW—IF INTERPRETATION CONTENDED FOR WOULD
   RENDER STATUTE UNCONSTITUTIONAL, COURT MUST SEEK INTERPRE-
   TATION WHICH WILL RENDER IT VALID. If court is of opinion
   that interpretation contended for would render a statute uncon-
   stitutional, it is its duty to ascertain whether some other inter-
   pretation within meaning and intent would render the language
   employed constitutional, and thereby uphold its validity.

8. WATERS AND WATER COURSES—LANDS NOT INCLUDED IN IRRIGATION
   DISTRICT AT TIME OF ORGANIZATION INCLUDED ONLY ON APPLICA-
   TIONS OF OWNERS. Lands not included in an irrigation district,
   organized under Laws 1919, c. 68, at time of its organization
   can be included by its board as expressly provided in the stat-
   ute only on application of the owners.

Appeal from District Court, Second District, Davis
County; *George S. Barker,* Judge.

Action by John Jackson and others against the Bonneville
Irrigation District. Judgment for defendant, and plaintiffs
appeal.

REVERSED, and remanded for new trial, with directions.

*Oscar W. Moyle* and *Harry W. Rudine,* both of Salt Lake
City, for appellants.

Corpus Juris-Cyc. References.

[1]   Waters, 40 Cyc. p. 819 n. 99.
[2]   Waters, 40 Cyc. p. 821 n. 23 New.
[3]   Corporations, 14a C. J. p. 84 n. 85.
[4]   Waters, 40 Cyc. p. 820 n. 12 New.
[5]   Waters, 40 Cyc. p. 820 n. 11, 12 New.
[6, 7]   Constitutional Law, 12 C. J. pp. 776 n. 43; 788 n. 1; 791
n. 19; 795 n. 32.
[8]   Waters, 40 Cyc. p. 820 n. 12 New.

*Evans & Sullivan* and *Holmgren, Anderson & Russell,* all of Salt Lake City, for respondent.

THURMAN, J.

This is an action to quiet title to divers parcels of land in Davis county, Utah. The plaintiffs are the owners of the lands in severalty, and allege in their complaint that defendant claims some interest therein adverse to the plaintiffs, but that said claim is without foundation. The complaint is in the usual form in an action to quiet title. Defendant, by its answer, admits that plaintiffs are the owners of the land, but alleges that defendant is an irrigation district organized in pursuance of the provisions of chapter 68, Sess. Laws Utah 1919, and that its only claim of interest in the lands is the right to levy and collect taxes on the same on account of the water allotments thereon. The answer of defendant is voluminous and sets forth the various steps taken in organizing the district from the time of filing the petition, as provided in section 2 of the act referred to, down to the confirmation and approval thereof by decree of the district court of Davis county. The provisions of the statute appear to have been substantially complied with and properly interpreted, except as hereinafter stated. The answer alleges that the lands of plaintiffs are included in the district; that water has been allotted thereon; and that they are subject to assessment for revenue for all the lawful purposes of the district, including the payment of principal and interest on bonds authorized by the district, as provided by law.

The decree of the district court approving and confirming the organization of the district and the proceedings of the board of directors is relied on by defendant as an adjudication of all the questions in controversy in the instant case.

Replying to the allegations of defendant's answer, plaintiffs challenge the validity of the allotments of water made to their lands, and allege that said lands were and are sufficiently supplied with water for irrigation and other purposes from other and independent sources, and that additional

water cannot be beneficially used thereon. They allege, by way of estoppel, that, as soon as they learned that water had been allotted to their lands by the board of directors of the district, they consulted the defendant, its officers, attorney, and engineer, and were assured by them that, if water was allotted to land that did not need water or upon which water could not be beneficially used, the mistake would be corrected and the allotments annulled; that, relying upon said promises, plaintiffs were led to believe it was not necessary to make any protests or objections to any of the proceedings, other than to request the defendant to cancel said allotments.

The trial court found the issues in favor of the defendant, but also found that at the time of the organization of the district, and for many years prior thereto, plaintiffs' said land had been fully supplied with water and the means of conveying and distributing the same, and that no water supplied by the defendant could be beneficially used thereon. Judgment for defendant was entered on the findings.

Plaintiffs appeal and assign numerous errors, some of which challenge the jurisdiction of the board in making the allotments; others assign as error the rejection of evidence offered by plaintiffs and the order denying plaintiffs' motion for a new trial.

This proceeding on the part of plaintiffs is a collateral attack upon the decree of the district court approving and confirming the organization of the district and the proceedings of its board of directors. If the board acted within its jurisdiction in doing the things complained of, any errors it may have made cannot be corrected in the manner attempted here. This is elementary and conceded by plaintiffs.

Whether or not the board acted within its jurisdiction in allotting water to plaintiffs' land can only be determined by referring to the statute, in pursuance of 1 which the district was organized. The statute is too voluminous to quote from, at any considerable length. It is necessary, however, to state briefly the substance of its most important features as relates to the organization of the district and the allotment of water.

The statute, c. 68, supra, states the purpose of the act to be:

"Conserving and putting to beneficial use the public waters of the state and preventing undue waste thereof."

The Governor, upon the recommendation of the state engineer, or 50 or a majority of owners of lands or holders of title or evidence of title to lands requiring water in any district, may propose the organization. Lands having sufficient water are exempt from the operation of the act. The petition for organization must be filed with the board of county commissioners of the county which embraces the largest acreage of the proposed district. The matter required to be stated in the petition is clearly defined by the statute. When the petition is filed with the county board the board must send a certified copy to the state engineer, with the request that a water survey and allotment be made. The state engineer must thereupon cause a water survey to be made of all the lands within the district for the purpose of determining and allotting the maximum amounts of water which could be beneficially used on the lands. Each 40-acre tract must be separately surveyed and allotment made therefor. On completion of the survey and allotment the state engineer must file with the board of county commissioners his return of survey and report of allotment. The county commissioners shall then cause notice to be published to the effect that a petition for organizing an irrigation district has been filed, water survey and allotment made, and a date set for hearing of applications for exclusion and inclusion of lands and revision of allotments. The statute provides the method of publication. The county commissioners shall, upon the date set, proceed to determine, list, and plat the lands to be included in said proposed district, from the petition and from such applications for exclusion of lands therefrom and the inclusion of lands therein as may be made in accordance with the intent of the act. The commissioners shall, by final order duly entered, determine and plat the lands included in such proposed district and list the lands included therein with the allotment of water made. The order of the commissioners shall not

exempt any land that may be benefited by the proposed system, nor shall it include any lands that will not be benefited by the proposed water supply. Lands not appearing on the plat of the proposed district may also be included upon application of the owners.

After the lands included in the district have been tested and platted, as above stated, and the name of the district designated, the commissioners shall, by order duly entered, call an election of the land owners of said district to be held for the purpose of determining whether or not said district shall be organized. By such order the commissioners shall submit the names of one or more persons from each of the divisions of said district, as provided in the statute, to be voted for as directors of said district. The notice for the election must be published as provided in the act. At all elections held under the provisions of the act all persons to whom water has been allotted are entitled to vote. The form of ballot is designated and each voter is entitled to cast one vote for each acre-foot of water or fraction thereof allotted to said voter's land. If, upon the canvass of the votes by the commissioners for organization of the district and election of directors, it appears that a majority have voted for organization, the commissioners shall make an order declaring the district duly organized and shall declare the persons receiving respectively the highest number of votes for such several offices to be duly elected to such offices. The commissioners shall cause a copy of such order, including a list and plat of the lands of the district with water allotment, to be immediately filed for record in the office of the county clerk of the county in which the petition is filed, and a certified copy thereof with the county recorder first determined the amount of water required for the land within in each county in which any portion of such lands are situated. The board of directors of said district shall then qualify as provided by law and enter upon their duties as directors of said district. The statute then provides for subsequent elections and qualification of officers.

The district having been declared duly organized and the first officers elected and qualified, as above stated, the next step in the proceeding is of such importance under the issues

presented as to justify quoting the following excerpt from section 11 of the act:

"Upon the completion of the organization of the district and before any bond issue, or contract is voted on, any assessment levied, or toll or charge imposed, the board of directors having the district and the amount of water available for the use of the district, shall make a final allotment of water for each forty-acre tract or smaller tract in separate ownership, which allotment for each such tract shall not be less than its proportion of the amount of water available, using the state engineer's allotment as a basis; such allotment may, however, be increased to an amount not exceeding the amount allotted by the state engineer should the amount of water available for the use of the district be increased. Such final allotment shall be the basis for all assessments, tolls and charges levied against the land and shall also thereafter be the basis of the vote at all elections. A copy of the order making such allotment or any increase thereof as herein provided, certified to by the secretary of the district shall be immediately filed for record in the office of the county clerk of the county in which the office of the district is located and a certified copy filed with the county recorder of each county in which any lands of the district are situated. Nothing in this act, however, shall prohibit the state engineer, upon petition by the board of directors after the organization of the district has been perfected from increasing the maximum allotment of water for any tract or tracts of land embraced within the district when in the opinion of the state engineer said tract or tracts of land cannot be beneficially irrigated with the amount of water allotted."

The next step material to the question presented is a proceeding for the issuance of bonds for the purposes of the district and sale thereof. This is accomplished by election after publication of notice and appropriate resolutions of the board. It is then provided that all obligations of the district, including principal and interest on bonds, shall be paid by revenue derived from annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payment, as provided in the act. The assessment is to be made on the value per acre-foot of the water allotted to the land. Provision is made for the inclusion of other land in the vinicity upon application of the owners of such lands after notice to the voters

of the district and hearing thereon. The next material step is the petition to the district court for confirmation of all prior proceedings and a decree declaring the same to be valid and in accordance with law.

The foregoing is, in substance, a skeleton of such provisions of the act as are essential to a determination of the questions involved. Other provisions, if deemed material, will be referred to at the appropriate time and place before concluding the opinion.

As we understand the record, although in some respects it is confusing, there is no complaint on the part of the plaintiffs as to any proceeding of the state engineer, unless it be errors in description, or the board of county commissioners, or any other officer down to the completion of the organization of the district and the election of the board of directors, which occurred at the same time.

The record of the county commissioners in this case at that time showed that the lands of some of the plaintiffs were entirely excluded. As to other plaintiffs, some allotments were made to certain definite parcels of land. Those to whom no allotment was made had no vote in the organization of the district or the election of the officers. Those to whom some allotment was made were entitled to cast one vote for each acre-foot and one vote for each fraction of a foot.

The principal grievance of which plaintiffs complain is the new allotments made, under color of the statute quoted, after the district was organized and the directors entered upon the discharge of their duties. At that time allotments were made to some of the plaintiffs for the first time. As to other plaintiffs, allotments were made for the first time to new and different parcels of land. No notice whatever was given for this proceeding, unless the statute itself is notice. We regard this as by far the most serious question presented for our determination. We shall, however, defer its further consideration until one or two other questions are disposed of.

At divers times during the progress of the trial, plaintiffs' attorney attempted to introduce evidence to the effect that plaintiffs had protested to the president and officers of the

district, also to its attorney and the state engineer, to the effect that their lands should be excluded because they were already supplied with water and that no additional quantity could be beneficially used thereon; that these officials assured . plaintiffs that the matter complained of would be corrected. Such evidence was offered in support of plaintiffs' plea of estoppel. These protests were made sometimes to one or more officials and sometimes to others, and on a few occasions it appears they were made when the members of the board were all present, whether in formal session or not does not appear. In each instance the proffered testimony, on objection of defendant's counsel, was rejected by the court. These rulings of the court are assigned as error.

The court is of opinion there was no error in the rulings complained of. The defendant was not bound by any statements made by one or more of its officers, unless **2** they were authorized by the board to make such statements.

While we are not inclined to hold that the acts of a corporation can be proven only by the official minutes of the board, we, nevertheless, understand the rule to be that in order to bind the corporation the board must act, and act as a board either in a regular session or in a special **3** session called for the purpose. A rigid adherence to the rule has no doubt been productive of hardship in many cases, but a disregard of the rule would result in endless confusion and be productive of far greater mischief than a rigid application.

The next contention vigorously urged by plaintiff is that the allotment of waters to lands already supplied with sufficient water from independent sources was beyond the jurisdiction of both the county commissioners and the board of directors of the district. .

. It has already been stated that the trial court found that plaintiffs' lands were fully supplied with water and that an additional supply could not be beneficially used thereon.

If plaintiffs' contention is sound that the allotment of water to such lands was beyond the jurisdiction of either

of the boards referred to, then plaintiffs had the right to have the question adjudicated in this proceeding, and, in view of the finding made by the court, judgment should have been entered in their favor. But is it true that the matter of allotting water to lands already sufficiently supplied was beyond the jurisdiction of the boards referred to especially the board of county commissioners?

Counsel for plaintiffs call our attention to one case in particular that strongly supports their contention—*State* v. *Several Parcels of Land*, 80 Neb. 424, 114 N. W. 283. In that case the court unqualifiedly held that allotting water to lands already fully supplied was beyond the jurisdiction of the county board. The statute there is substantially the same as ours, and the case is therefore in point. The opinion refers to a former Nebraska case and approves it. Later the case of *Sowerwine* v. *Central Irr. Dist.*, 85 Neb. 687, 124 N. W. 118, came before the same court. While the opinion distinguishes the two former cases from the one before the court, the rule declared therein as applied to the facts was nevertheless approved. Counsel also rely on Kinney on Irrigation (2d Ed.) § 1431 p. 2579 in which the author places Colorado and Utah in the class with Nebraska holding that such matter is beyond the jurisdiction of the board. Plaintiffs also refer us to two Utah cases, *Horn* v. *Shaffer*, 47 Utah, 56, 151 P. 555, controlled by a former statute materially different from the statute involved in the case at bar, and *Surrage* v. *McKay*, 60 Utah, 118, 206 P. 722, in which the question here presented was not in any sense involved.

As controverting the rule announced in the Nebraska cases, counsel for defendant call our attention to numerous cases, which they contend hold to the contrary: *Knowles* v. *New Sweden Irr. Dist.*, 16 Idaho, 217, 101 P. 81; *Oregon Short Line R. Co.* v. *Pioneer Irr. Dist.*, 16 Idaho, 578, 102 P. 904; *Rose* v. *Kimball*, 91 Wash. 60, 157 P. 38; *Board of Directors* v. *Tregea*, 88 Cal. 334, 26 P. 237; *Board of Directors Quincy Valley Irr. Dist.* v. *Scott*, 79 Wash. 434, 140 P. 391; *Petition of Kempton et al.*, 63 Mont. 293, 207 P. 121; *Chambers* v. *Board of Supervisors of Tehama County*, 58 Cal. App. 401,

207 P. 288; *Harbough* v. *Enlarged Baxter Creek Irr. Dist.,* 58 Cal. App. 134, 207 P. 1018; *Miller & Lux* v. *Board of Supervisors of Madera County,* 189 Cal. 254, 208 P. 304; *Wilder* v. *Irrigation Dist.,* 55 Colo. 363, 135 P. 461.

We have cited these cases as cases relied on by the respective litigants in the case at bar. We shall not review them here, as it would unduly lengthen this opinion and serve no useful purpose.

As far as concerns the jurisdiction of the board of county commissioners to make allotments upon land, whether already sufficiently irrigated or not, notwithstanding the authorities upon which plaintiffs rely, the court is of opinion the contention of plaintiffs cannot be sustained. The commissioners in compliance with the statute, at the proper time, gave the notice required by the statute that at a certain time and place they would sit as a board and grant a hearing upon the question of exclusion and inclusion of lands and revision of allotments within the designated district. There is no contention made that there was any irregularity in the proceedings down to that time, unless probably misdescriptions. The petition for organization had been filed; the state engineer had been requested to make his survey and allotment of water; he had made his survey and allotment and returned the same to the commissioners. The next step was a hearing upon the question of exclusion and inclusion and revision of allotments, and, as to that hearing, the statutory notice, as before stated, had been given. The hearing was had and every landowner within the proposed district had the opportunity to appear and show why his land should have an allotment of water, or why the allotment made by the commissioners should be modified or canceled. If, under these circumstances, the commissioners were without jurisdiction to make an allotment of water to any parcel of land within the district, or cancel or revise an allotment already made, then it must be because the most vital and substantial provisions of the statute in question are unconstitutional and void. But it is not contended that the act is unconstitutional, especially the provisions under immediate review, and therefore it is unnecessary to pass

upon the question as to whether or not the provisions in question are unconstitutional. The conclusion reached by the commissioners at the hearing and the order made by them upon the question of exclusion or inclusion may have been erroneous, they may have been subject to reversal at the proper time and in a proper proceeding but the trial court in the instant case was powerless to correct such errors, if errors were made, because to have attempted to do so would have been to undertake in a collateral proceeding to set aside and nullify a judicial determination by another court in another and different case. This, as stated early in the opinion, cannot be done. But the jurisdiction of the board of directors of the district, after the district was organized, to undertake to make new allotments to land theretofore excluded, and include new lands and new parties, and subject their lands, without notice and without their consent, to the burdens of taxation, presents an entirely different question, and one which, as before suggested, is the most important question involved in this appeal.

It is the contention of defendant that under the provision of the statute we have quoted, which is a part of section 11 of the act, the board of directors, upon completion of the organization, had the power, without notice, to make allotments of water to land which, prior to the organization, had been entirely excluded, and thereby subject such lands to the burden of taxation the same as if they had been included prior to the organization.

The contention of plaintiffs is that the statute referred to only contemplates that the board of directors, after the organization of the district, may revise and modify the allotments made before the organization upon the parcels of land to which water was allotted by the county commissioners by increasing or decreasing the quantity theretofore allotted, according to the supply of water available for distribution.

These contentions, in our opinion, involve a constitutional question which goes to the very meat of the controversy. If defendant's contention is correct, it simply means that lands which had theretofore been excluded after a regular hearing

before a tribunal authorized by the statute may, by order of the board of directors, be afterwards included and subjected to taxation without notice to the owners, who did not even have a voice in the organization of the district, and without their consent. Such a proceeding, in our opinion, would be in violation of the due process clause of the state Constitution, as well as that of the United States.

It is contended, however, that notice was given by the special proceeding in the district court for confirmation of the organization and proceedings of the board, and that the plaintiffs at that time had their day in court and their opportunity to be heard.

This court cannot agree with that contention. Our opinion, upon a careful reading of the statute, is that when the organization of the district is completed, and the first officers elected, the area of the district consists only of lands to which water had been allotted by the county commissioners, and that lands which had been excluded by the county commissioners are not within the district, as organized, although within the area originally proposed when the petition for organization was filed. The statute provides for enlarging the area of the district, but not by the simple fiat of the board.

The notice provided for in the confirmation proceeding, section 49 of the act, is addressed only to parties interested in the district, and not to parties whose lands were excluded.

It is the duty of this court, and of every judicial tribunal, as far as that is concerned, to maintain the integrity of the Constitution of the United States and of this state. If then, in attempting to interpret the statute of the state in a given case, we are confronted with the question as to whether or not the statute, or some provision thereof, is unconstitutional, our first duty is to presume it to be constitutional and solve every reasonable doubt in favor of its constitutionality. If, in so doing, we are of opinion that an interpretation is contended for that would render the statute unconstitutional, it then becomes our duty to ascertain whether or not some other interpretation within the

meaning and intention of the Legislature may not be given to the language employed that would render the statute constitutional, and thereby uphold its validity.

Believing as we do that the defendant's interpretation of the statute renders it unconstitutional and unenforceable, we are impelled to the conclusion that the Legislature in enacting the provision in question must have had some other purpose in view. The interpretation contended for by plaintiffs appears to the court to be both reasonable and logical and in no sense obnoxious to any provision of the Constitution.

There is one further question before we conclude. It appears from the record that there is a wrong description of many parcels of the land in question. It is asserted by plaintiffs' counsel that some of it is as much as six miles out of place, while other portions are entirely outside the district originally designed. We have already determined in this opinion that lands to which water had not been allotted at the time of the organization is not within the irrigation district, and is therefore not within the jurisdiction of the board of directors. Such lands, after the organization of the district, can be included by the board only as provided in the statute upon application of the owners of the land. What a court of equity might do by way of correcting mistakes, or directing how mistakes might be corrected, is not before us in this proceeding. Our decision thereon is therefore reserved.

It has not been our purpose in disposing of the questions involved to make specific reference to any particular party or undertake to determine the right of any particular plaintiff. Our only purpose is and has been to state the law applicable to the situation disclosed by the record, and thereby lay down a rule by which the trial court may determine the rights of the parties.

The judgment is therefore reversed, and the cause remanded for a new trial, with directions to the trial court to permit the parties, if they so desire, to amend their pleadings, the cause thereafter to proceed in accordance with the opinion. Appellants to recover costs.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.